```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
J & J SPORTS PRODUCTIONS, INC.,
as Broadcast Licensee of the May 5,
2007, DeLaHoya/Mayweather Program,

                    Plaintiff,                **REPORT AND**
                                               **RECOMMENDATION**
     -against-
                                               07-CV-3616 (ENV) (KAM)
ANGELA PERALTA, individually, and as
officer, director, shareholder and/or
principal of ANGELITA RESTAURANT CORP.
d/b/a/ ANGELITA RESTAURANT, and
ANGELITA RESTAURANT CORP. d/b/a/
ANGELITA RESTAURANT,

                    Defendants.
----------------------------------------X
```

**MATSUMOTO, United States Magistrate Judge:**

By order dated December 13, 2007, United States District Judge Eric N. Vitaliano referred this matter, pursuant to 28 U.S.C. § 636(b), to the undersigned for an inquest on damages, upon a motion by J & J Sports Productions, Inc. ("plaintiff"), to enter a default judgment against defendants Angela Peralta, individually, and as officer, director, shareholder and/or principal of Angelita Restaurant Corp. d/b/a Angelita Restaurant, and Angelita Restaurant Corp. d/b/a Angelita Restaurant (collectively, "defendants"), for alleged violations of 47 U.S.C. §§ 553, 605(a), and 605(e)(4), and following a notation of default by the Clerk of the Court dated November 2, 2007. Pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), plaintiff's

default motion seeks statutory damages of up to $10,000 and, pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), enhanced damages of up to $100,000, against the defendants for violation of 47 U.S.C. § 605(a). Plaintiff's complaint also seeks attorney's fees, costs and post-judgment interest. Defendants have not submitted any opposition to plaintiff's motion, despite receiving notice and an opportunity to do so. (See Dkt. No. 6, Ex. 10, Cert. of Service of Motion for Default.)

For the reasons set forth below, it is respectfully recommended that plaintiff's motion for default be granted and that judgment be entered in favor of the plaintiff and against the defendants, in the total amount of $11,540, inclusive of basic and enhanced statutory damages of $10,990 and costs of $550.

## I. BACKGROUND

According to the complaint, plaintiff acquired the rights to distribute the "DeLaHoya/Mayweather Program" ("the Event"), scheduled for May 5, 2007, which was broadcast via closed-circuit television and encrypted satellite signal. (Dkt. No.1, Compl. ¶ 15.) Defendant Angela Peralta is "the principal of Angelita Restaurant Corp. d/b/a/ Angelita Restaurant" ("the Establishment"), and "was the individual with supervisory capacity and control over the activities occurring within the [E]stablishment on May 5, 2007." (Compl. ¶¶ 7, 8.) Angelita

Restaurant Corp. d/b/a/ Angelita Restaurant, is a business entity with principal place of business located at 107-01 37th Avenue, Corona, New York.  (Compl. ¶¶ 10.)

Plaintiff contracted with various establishments in New York State, authorizing those entities to publicly broadcast the Event to their patrons.  (Compl. ¶ 16.)  The broadcast of the Event originated as a satellite uplink, and was re-transmitted to cable and satellite providers via a satellite signal.  (Compl. ¶ 15.)

Plaintiff also contracted with an investigative agency to retain independent investigators to visit various establishments in the New York City area on the night of the Event.  (See Dkt. No. 6, Gagliardi Aff. ¶ 4.)  The investigators were provided with a list of authorized and legal locations that had paid the required fee to broadcast the Event, so that they would be able to visit only locations that were not authorized to broadcast the Event.  (Id. ¶ 5.)  Plaintiff includes with its motion the affidavit of an independent investigator who states that he visited the Angelita Restaurant ("the Establishment") on May 5, 2007, at approximately 11:30 p.m.  (Lubrano Aff., attached as Ex. C to Gagliardi Aff.)  The investigator observed one television set exhibiting the Event and approximately 50 individuals in the establishment, which had an estimated capacity of 50 persons.  (Id.)

According to plaintiff, the defendants' broadcast of the Event was not authorized by plaintiff, and could not be mistakenly or innocently intercepted. (Gagliardi Aff. ¶¶ 8, 9.) Plaintiff states that such unauthorized broadcasts "cannot occur without the willful and intentional modification of electronic equipment, the business misrepresentation of a commercial establishment as residential, or, the removal of cable traps and/or devices designed to prevent such unauthorized exhibits." (Id. ¶ 16.)

Plaintiff filed the instant action on August 27, 2007, and served the summons and complaint on defendants on September 10 and 13, 2007. (Dkt. Nos. 4-5, Affs. of Service.) Defendants have not appeared, answered or otherwise responded to the complaint or plaintiff's motion to enter a default judgement.

## II. DISCUSSION

### A. Default Judgment Standard

Rule 55(b) of the Federal Rules of Civil Procedure provides that the Court may enter judgment against the defaulting party when a plaintiff moves for judgment against an adverse party who has failed to answer or otherwise appear in the action. When a default judgment is entered, the defendant's failure to respond constitutes an admission of the well-pleaded factual allegations in the complaint, except as for the claims relating

to damages.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).  Moreover, an inquest by affidavit, without an in-person hearing, may be conducted as long as the court can ensure "a basis for the damages specified in the default judgment."  Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)).  Thus, the movant need only show adequate support for the relief it seeks.  Greyhound, 973 F.2d at 158-59.

As noted above, plaintiff's complaint invokes, inter alia, 47 U.S.C. §§ 553 and 605(a) as bases for relief.  Sections 553 and 605 apply, respectively, to cable and radio communications, but both provisions may apply where a cable-borne transmission originates as a radio transmission.  Section 553(a)(1) provides that:

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

Section 605(a) provides that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.  No person not being entitled thereto shall receive or assist in

> receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Section 605(a) applies to "the interception of cable-borne, as well as over-the-air, pay television where cable-borne transmissions originate as satellite transmissions." <u>Kingvision Pay-Per-View Corp., Ltd. v. Keane</u>, No. 02-CV-5173, 2006 WL 1704474, at *3 (E.D.N.Y. June 16, 2006) (<u>quoting</u> <u>Int'l Cablevision, Inc. v. Sykes</u>, 75 F.3d 123, 130 (2d Cir. 1996) (internal quotations omitted)). Both statutes apply when television programming is transmitted or intercepted over both cable and satellite. <u>Sykes</u>, 75 F.3d at 130.

Plaintiff's complaint also invokes 47 U.S.C. § 605(e)(4), alleging that defendants knowingly "modified a device or utilized equipment, knowing or having reason to know that the device or equipment is used primarily in the assistance of the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other prohibited activity." (Compl. ¶ 26.) As this court and others have noted, however, 47 U.S.C. § 605(e)(4), "which addresses the manufacture, assembly, modification, import, export, sale, and distribution of pirate access devices, is aimed at 'upstream manufacturers and distributors, not the ultimate consumer of pirating devices.'" <u>Garden City Boxing Club, Inc. v. Morales</u>, No.

05-CV-0064, 2005 WL 2476264, *5 (E.D.N.Y. Oct. 7, 2005) (citing DirecTV v. Neznak, No. 03 Civ. 918, 2005 WL 1353618, at *2 (D. Conn. May 10, 2005)).  In the present case, because plaintiff has not alleged any facts supporting a finding that plaintiffs are "upstream manufacturers and distributors" of illegally modified devices as opposed to mere "ultimate consumers" of such devices, the court finds that plaintiff has not pled a cause of action under 47 U.S.C. § 605(e)(4).  In addition, although plaintiff's complaint refers to both 47 U.S.C. §§ 553 and 605(a) as bases for relief, and provides allegations to sustain causes of action under each, plaintiff's motion for default judgment seeks damages only under 47 U.S.C. § 605(a).  Accordingly, given the facts alleged by plaintiff, the court respectfully recommends that plaintiff's motion for default be granted as to defendants' liability under 47 U.S.C. § 605(a).

**B.     Damages**

Unlike allegations pertaining to liability, those pertaining to damages are not deemed admitted in the context of a motion for default judgment.  Greyhound, 973 F.2d at 158.  Therefore, the movant must establish its entitlement to the recovery of damages.  Id.   As stated above, no hearing is required because plaintiff seeks statutory damages, rather than actual damages, and because defendants have not responded to plaintiff's allegations despite having notice and an opportunity

to do so. Transatl. Marine, 109 F.3d at 111 (quoting Fustok, 873 F.2d at 40).

In the instant action, plaintiff's motion for default seeks damages only under 47 U.S.C. § 605(a). Plaintiffs seeking compensation for damages and lost profits under 47 U.S.C. § 605 may elect to seek either actual damages and lost profits or statutory damages. See Time Warner Cable v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999); Garden City Boxing Club, Inc. v. Perez, No. 05-CV-3713, 2006 WL 2265039, at *5-6 (E.D.N.Y. Aug. 8, 2006). In this case, plaintiff seeks statutory damages. (Pl.'s MOL at 6.)

Title 47 U.S.C. § 605(e)(3)(C)(i)(II) allows a party to recover an award of statutory damages "for each violation of subsection (a) . . . involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . ." In addition, section 605(e)(3)(C)(ii) provides that where "the court finds that the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) . . . ."

As other courts have noted, 47 U.S.C. § 605 provides no statutory definition of the term "violation." See Garden City

Boxing Club. Inc. v. Rosado, No. 05-CV-1037, 2005 WL 3018704, at *3 (E.D.N.Y. Oct. 6, 2005). "However, most cases applying this statute in a commercial context have interpreted the showing of an event on a single night as one violation." Perez, 2006 WL 2265039, at *5 (citing Time Warner Cable v. Taco Rapido Rest., 988 F. Supp. 107, 111 (E.D.N.Y. 1997)).

"In determining the amount of damages that can be imposed for each violation within the range of $1,000 to $10,000 per violation, Section 605 leaves the decision within the sound discretion of the court." Perez, 2006 WL 2265039, at *5 (citing Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993) (reducing an award from $250,000 to $10,000 for commercial broadcast of a boxing match) and Taco Rapido Rest., 988 F. Supp. at 111). Courts in this circuit have relied upon one of two methods of calculating statutory damages in cases involving the unauthorized receipt and exhibition of pay-per-view events. See Googies Luncheonette, 77 F. Supp. 2d at 489. The first method bases the award on the number of patrons in the establishment who viewed the broadcast. See, e.g., Taco Rapido Rest., 988 F. Supp. at 111 ($50 per patron); Entm't by J&J, Inc. v. Mama Zee Rest. & Catering Servs., No. 01-CV-3945, 2002 WL 2022522, at *4 (E.D.N.Y. May 21, 2002) ($50 per patron); New Contenders, Inc. v. Diaz Seafood Corp., No. 96 Civ. 4701, 1997 WL 538827, at *2 (S.D.N.Y. Sept. 2, 1997) ($300 per patron). The

second method awards a flat sum for each violation. See, e.g., Entm't by J&J, Inc. v. Suriel, No. 01 Civ. 11460, 2003 WL 1090268, at *1 (S.D.N.Y. Mar. 11, 2003) (awarding $11,000 for basic and enhanced statutory damages); Kingvision Pay-Per-View Corp., Ltd. v. Papacito Lidia Luncheonette, Inc., No. 01 Civ. 7575, 2001 WL 1558269, at *2 (S.D.N.Y. Dec. 6, 2001) (awarding $20,000 for basic and enhanced statutory damages); Kingvision Pay-Per-View, Ltd. v. Jasper Grocery, 152 F. Supp. 2d 438, 442-43 (S.D.N.Y. 2001) (awarding $15,000 ($5,000 for basic statutory damages and $10,000 for enhanced statutory damages)).

In cases where there is uncontradicted evidence of the number of patrons viewing the match in an establishment, courts have used the first approach and multiplied the number of patrons by a set sum, plus any cover charges or other profits attributable to the unauthorized viewing. See Googies Luncheonette, 77 F. Supp. 2d at 490; see also Kingvision Pay-Per-View Corp., Ltd. v. Cardona, No. 03 Civ. 3839, 2004 WL 1490224, at *3 (S.D.N.Y. June 30, 2004); Time Warner Cable v. Sanchez, No. Civ. 5855, 2003 WL 21744089, at *4 (S.D.N.Y. July 8, 2003). Many cases have multiplied the number of patrons by the residential fee for the pay-per-view broadcast on the theory that the patrons who watched the unauthorized broadcast would have ordered it individually for residential use. See Garden City Boxing Club, Inc. v. Batista, No. 05-CV-1044, 2007 WL 4276836, *5 (E.D.N.Y.

Nov. 30, 2007).  See, e.g., Rosado, 2005 WL 3018704, at *3 (recommending statutory damages award of $989.10 based on $54.95 for each of the 19 patrons observed in the establishment); Garden City Boxing Club, Inc. v. Bello, No. 05-CV-1300, 2005 WL 2496062, at *3 (E.D.N.Y. Sept. 20, 2005) (recommending statutory damages based on same $54.95 residential rate for each of the 40 patrons who could have viewed the prize fight based on the establishment's capacity).  Plaintiff seeks up to $10,000, the statutory maximum under 47 U.S.C. § 605(e)(3)(C)(i)(II), in this case.  (Pl.'s MOL at 7.)  The investigator's affidavit states that 50 individuals were present when the investigator observed the broadcast of the Event, and that the capacity of the Establishment was approximately 50 persons.  Plaintiff's affidavit provides that the cost to purchase the pay-per-view broadcast of the Event at a residential property was $54.95.  (Gagliardi Aff. ¶ 9.B.)   Assuming that all 50 of the individuals in the Establishment were patrons who would have purchased the event from home at the residential price, plaintiff should be awarded $2,747.50.  Given the lack of evidence to justify a higher award, such as allegations of multiple violations, it is appropriate to award basic damages in the amount of $2,747.50.

Plaintiff further seeks an enhancement of damages for willfulness of up to $100,000, pursuant to 47 U.S.C. §

-11-

605(e)(3)(C)(ii). (Pl.'s MOL at 7.) To receive enhanced damages, plaintiff must prove that defendants' broadcast of the Event was willful and for "purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). Courts typically consider the following factors in determining whether a defendant's willful conduct calls for enhanced damages: "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; defendant's charging a cover charge or charging premiums for food and drinks." Kingvision Pay-Per-View, Ltd. v. Recio, No. 02 Civ. 6583, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003) (internal citations omitted).

Plaintiff does not allege that the defendants advertised or displayed the Event to entice patrons into the Establishment, imposed an admission or cover charge, or that the Establishment brought in significant income as a result of displaying the Event. Plaintiff is nonetheless entitled to a further enhancement of the damages award because the record demonstrates that the defendants affirmatively and willfully intercepted the Event for financial gain, and that there is no way that the defendants could have inadvertently intercepted plaintiff's broadcast. (Gagliardi Aff. ¶¶ 9, 16.)

In circumstances demonstrating such willful violation, it is appropriate to assess enhanced damages in conjunction with basic statutory damages. As some courts have observed, awarding the statutory minimum prescribed "'would not be sufficient deterrence' since the penalty would merely be 'the amount that should have been paid.'" Cablevision Systems New York City Corp. v. Diaz, No. 01 Civ. 4340, 2002 WL 31045855, at *4 (S.D.N.Y. July 10, 2002) (quoting Time Warner Cable v. Domsky, No. 96 Civ. 6851, 1997 WL 33374593, at *6 (S.D.N.Y. Sept. 5, 1997)). In light of the statutory objective of deterring future violations of 47 U.S.C. § 605, coupled with defendants' willful violation of this provision, the Court finds that enhanced damages of $8,242.50, or three times the amount of basic statutory damages, are appropriate in this case. See, e.g., Keane, 2006 WL 1704474, at *6 (treble damages awarded for enhanced statutory damages) (citing Kingvision Pay-Per-View, Ltd. v. Body Shop, No. 00 Civ. 1089, 2002 WL 393091, at *4 (S.D.N.Y. March 13, 2002)); Googies Luncheonette, 77 F. Supp. 2d at 490-91 (where no special circumstances are shown, treble damages are a "reasonable deterrent against future violations"). Accordingly, it is respectfully recommended that plaintiff be awarded $2,747.50 in basic statutory damages and $8,242.50 in enhanced statutory damages, for a total damages award of $10,990.00.

## C. Attorney's Fees and Costs

Plaintiff's motion requests costs in the amount of $550.[1] (Dkt. No. 6, Lonstein Aff.) An award of costs, including reasonable attorney's fees, is mandatory under 47 U.S.C. § 605. See 47 U.S.C. § 605(e)(3)(B)(iii). The Court has examined plaintiff's request for costs and finds that plaintiff has submitted documentary evidence to support its request for $550 in costs, including a $350 filing fee and $200 for service of the summons and complaint upon the defendants. Accordingly, it is respectfully recommended that plaintiff be awarded $550 in costs.

## D. Liability of the Individual Defendants

Plaintiff's complaint names Angela Peralta as an individual defendant and alleges that Ms. Peralta is the principal of and doing business as Angelita Restaurant Corp. d/b/a/ Angelita Restaurant. (Compl. ¶ 7.) The complaint also alleges that, upon information and belief, Ms. Peralta was the individual with supervisory capacity and control over activities occurring within the Establishment on May 5, 2007. (Id. ¶ 8.) To establish a violation of 47 U.S.C. § 605(a) by an individual defendant, plaintiff must show that the individual defendant "authorized" the violations set forth in the complaint. See Kingvision Pay-Per-View Ltd. v. Olivares, No. 02 Civ. 6588, 2004

---

[1] Although the Complaint contains a request for attorney's fees, plaintiff's submissions in connection with its motion for default judgment seek only costs.

WL 744226, at *5 (S.D.N.Y. Apr. 5, 2004) (quoting Softel Inc. v. Dragon Med. & Sci. Commc'ns, 118 F.3d 955, 971 (2d Cir. 1997)). "To establish vicarious liability, . . . [plaintiff] must show that . . . [the individual defendant] had a 'right and ability to supervise' the infringing activities and had 'an obvious and direct financial interest in the exploitation of [the] copyrighted materials.'" Id. (quoting Shapiro, Bernstein & Co. v. H.L. Green Co., 316 F.2d 304, 307 (2d Cir. 1963)).

Assuming the truth of the undisputed allegations in the complaint, the motion for default establishes the requisite control and financial interest for Peralta. See id. (finding requisite control and financial interest where individual defendants were sole proprietor and officer, director, shareholder, and/or principal of defendant establishments). Therefore, the Court determines that Peralta is jointly and severally liable with her business for the violations of 47 U.S.C. § 605(a) discussed above. Accordingly, it is respectfully recommended that plaintiff's award be limited to a single recovery against the individual defendant and the corporate defendant, jointly and severally

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that plaintiff's motion for default be granted and a

judgment be entered against the defendants in the total amount of $11,540.00, inclusive of basic and enhanced statutory damages of $10,990.00 and costs of $550.00

Any objections to this Report and Recommendation must be filed with United States District Judge Eric N. Vitaliano within ten days of the date of its entry.  Failure to object within ten days of the date of entry will preclude appellate review by the District Court.  See 28 U.S.C. § 636(b)(1); Local Civil Rule 6.3; Thomas v. Arn, 474 U.S. 140 (1985); Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989). Any requests for extensions of time to file objections should be made to Judge Vitaliano.

Plaintiff shall serve, by hand or overnight delivery, a copy of this Report and Recommendation on the defendants no later than January 17, 2008, and file an affidavit demonstrating service of the same by January 18, 2008.

**SO ORDERED.**

Dated:   January 16, 2008
         Brooklyn, New York

                                    /s/
                              **Kiyo A. Matsumoto**
                              United States Magistrate Judge
                              Eastern District of New York